# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERACTIVE GAMES LLC, | Civil Action No. 1:26-cv-11544-WGY |
| *Plaintiff,* | **Oral Argument Requested** |
| v. | |
| DRAFTKINGS INC., | |
| *Defendant.* | |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S
# PARTIAL MOTION TO DISMISS UNDER RULE 12(b)(6)

Brian M. Seeve (BBO No. 670455)
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
bseeve@princelobel.com

Jamie R. Lynn
Thomas C. Martin (*pro hac vice*)
Michael Kachmarik (*pro hac vice*)
Andrew Wilson (*pro hac vice*)
Erica Rose (*pro hac vice*)
BAKER BOTTS L.L.P.
700 K St. N.W.
Washington, D.C. 20001
(202) 639-7786

Kurt M. Pankratz (*pro hac vice*)
Clarke W. Stavinoha (*pro hac vice*)
BAKER BOTTS L.L.P.
2001 Ross Ave, Suite 900
Dallas, TX 75201
(214) 953-6500

*Attorneys for Defendant DraftKings Inc.*

**Table of Contents**

**Page**

I.      Introduction..................................................................................................................... 1

II.     Legal Standard ................................................................................................................ 2

III.    IG's Claims Are Invalid as Patent-Ineligible Under Section 101 ...................................... 3

    A.      Claims 1-30 of the '382 Patent Claim Ineligible Subject Matter.................................. 5

        1.      *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea...................... 6

        2.      *Alice* Step 2: Claim 1 lacks an inventive concept .................................................. 8

        3.      Claim 1 is representative of all the '382 Patent claims........................................... 9

        4.      The allegations in IG's complaint fail to show eligibility or preclude dismissal . 10

    B.      Claims 1-40 of the '302 Patent Claim Ineligible Subject Matter............................... 11

        1.      *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea.................... 12

        2.      *Alice* Step 2: Claim 1 lacks an inventive concept ................................................ 14

        3.      Claim 1 is representative of all the '302 Patent claims......................................... 14

        4.      The allegations in IG's Complaint fail to show eligibility or preclude dismissal  16

    C.      Claims 1-30 of the '404 Patent Claim Ineligible Subject Matter............................... 17

        1.      *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea.................... 18

        2.      *Alice* Step 2: Claim 1 lacks an inventive concept ................................................ 18

        3.      Claim 1 is representative of all the '404 Patent claims......................................... 19

        4.      The allegations in IG's Complaint fail to show eligibility or preclude dismissal  20

IV.     Request for Oral Argument............................................................................................. 20

# Table of Authorities

**Page(s)**

CASES

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
838 F.3d 1266 (Fed. Cir. 2016).......................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014).............................................................................................. *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012).....................................................................................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................1

*Beteiro, LLC v. DraftKings Inc.*,
104 F.4th 1350 (Fed. Cir. 2024) ........................................................................ *passim*

*Bot M8 LLC v. Sony Corp. of Am.*,
465 F. Supp. 3d 1013 (N.D. Cal. 2020) ..........................................................................3

*Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*,
778 F. App'x 882 (Fed. Cir. 2019) ...............................................................................10

*BSG Tech LLC v. BuySeasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)........................................................................... *passim*

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)..................................................................................9, 16

*CG Tech. Dev., LLC v. DraftKings, Inc.*,
No. 2:16-cv-00781-RCJ-VCF, 2016 WL 7190547 (D. Nev. Dec. 12, 2016) ........1, 5

*CG Tech. Dev., LLC v. FanDuel, Inc.*,
442 F. Supp. 3d 840 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021).....................12

*Chewy, Inc. v. Int'l Bus. Machs. Corp.*,
94 F.4th 1354 (Fed. Cir. 2024) .....................................................................................16

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014).......................................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016)........................................................................... *passim*

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016).............................................................................................2

*Enovsys LLC v. Uber Technologies, Inc.*,
   No. 23-cv-04549-EJD, 2024 WL 3033995 (N.D. Cal. June 17, 2024) ..................................13

*FairWarning IP LLC v. Iatric Sys., Inc.*,
   839 F.3d 1089 (Fed. Cir. 2016)...........................................................................................16

*Fitbit Inc. v. AliphCom*,
   No. 16-cv-00118-BLF, 2017 WL 819235 (N.D. Cal. Mar. 2, 2017)................................13, 14

*Front Row Techs., LLC v. NBA Media Ventures, LLC*,
   204 F. Supp. 3d 1190, 1269 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs. LLC
   v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017).........................................12

*GeoComply Sols. Inc. v. Xpoint Servs. LLC*,
   No. CV 22-1273-WCB, 2023 WL 1927393 (D. Del. Feb. 10, 2023), *aff'd*, No. 2023-1578,
   2024 WL 4717268 (Fed. Cir. Nov. 8, 2024)................................................................. *passim*

*GoTV Streaming, LLC v. Netflix, Inc.*,
   166 F.4th 1053 (Fed. Cir. 2026) .........................................................................................11

*Hyper Search, LLC v. Facebook, Inc.*,
   No. 1:17-cv-1387-CFC-SRF, 2018 WL 6617143 (D. Del. Dec. 17, 2018).........................9, 19

*Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*,
   50 F.4th 1371 (Fed. Cir. 2022) .............................................................................................5

*Intell. Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015).............................................................................................14

*Interactive Games LLC v. DraftKings, Inc.*,
   No. 19-1105-RGA (D. Del. Sep. 25, 2023) ............................................................................1

*Location Based Servs., LLC v. Niantic, Inc.*,
   295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018) ................14

*Micro-Gaming Ventures, LLC v. DraftKings, Inc.*,
   No. 3:25-4102 (ZNQ) (JTQ), 2026 WL 867761 (D.N.J. Mar. 30, 2026)................................5

*Parker v. Flook*,
   437 U.S. 584 (1978)..............................................................................................................16

*PerDiemCo LLC v. NexTraq LLC*,
   720 F. Supp. 3d 1365 (N.D. Ga. 2024), *aff'd* No. 2024-1621,
   2026 WL 1379782 (Fed. Cir. May 15, 2026) .........................................................................13

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017)..................................................................................10, 12, 16

*Sanderling Mgmt. Ltd. v. Snap Inc.*,
  65 F.4th 698 (Fed. Cir. 2023) ........................................................................................20

*SAP Am. Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018)........................................................................................2

*Synopsys, Inc. v. Mentor Graphics Corp.*,
  839 F.3d 1138 (Fed. Cir. 2016)......................................................................................17

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring)......................................................1

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (Fed. Cir. 2021) ................................................................................7, 8, 12

*Weisner v. Google, LLC*,
  51 F.4th 1073 (Fed. Cir. 2022) ..................................................................................2, 8, 19

**STATUTES**

35 U.S.C. § 101.................................................................................................... *passim*

## I.     INTRODUCTION

This case should not proceed beyond the pleadings because all five of the patents asserted by Interactive Games ("IG") claim patent-ineligible subject matter under 35 U.S.C. § 101 ("Section 101") and are therefore invalid.  Three are addressed here—specifically U.S. Patent Nos. 12,409,382 (Dkt. 1-3, "'382 Patent"), 8,974,302 (Dkt. 1-4, "'302 Patent"), and 12,548,404 (Dkt. 1-5, "'404 Patent").[1]

Section 101 acts as a threshold filter to ensure that patents protect true technological inventions—not abstract ideas or the basic tools of innovation.  Section 101 prevents a would-be patentee from taking a well-known idea, performing it with a generic computer, and calling it a patentable invention just because the generic computer provides some advantage.  Invalidity under Section 101 is the sort of "basic deficiency" that can, and should, "be exposed at the point of minimum expenditure of time and money by the parties and the court"—i.e., at the pleading stage.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Early eligibility determinations "conserve scarce judicial resources" and provide a "bulwark against vexatious infringement suits."  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring).  IG has been particularly vexatious in this regard.  Indeed, this is the third suit brought by IG against DK, with all 14 of the previously-asserted patents having now been found invalid—many under Section 101—or voluntarily dismissed.[2]  The patents here suffer from many of the same issues of patent ineligibility under Section 101 that led to invalidation of IG's other patents.

---

[1] DraftKings Inc. ("DK") intends to seek dismissal of the remaining two patents on similar grounds pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).

[2] *See CG Tech. Dev., LLC v. DraftKings, Inc.*, No. 2:16-cv-00781-RCJ-VCF (D. Nev.) ("*IG (I)*") (7 patents invalidated under Section 101; 2 invalidated by Patent Trial and Appeal Board ("PTAB"); 1 dismissed); *Interactive Games LLC v. DraftKings, Inc.*, No. 19-1105-RGA (D. Del.) ("*IG (II)*") (3 patents invalidated by PTAB; 1 dismissed).

Particularly telling here is that the specifications of the '382 Patent, '302 Patent, and '404 Patent (collectively, the "Asserted Patents") themselves "describe[] the components and features listed in the claims generically." *Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) (quoting *Weisner v. Google, LLC*, 51 F.4th 1073, 1083-84 (Fed. Cir. 2022)). They do this with bald admissions and definitional language that explains how the generically claimed abstract steps can be performed in any way, using anything, including the human mind. This "supports the conclusion that these components and features are conventional." *Id.* It also supports the conclusion that the Asserted Patents are invalid under Section 101 because, when the patent's own specification confirms the claimed invention runs on a generic computer, using off-the-shelf technology without improving the way the underlying technology itself functions, the Court need look no further—the patent itself has made the case for ineligibility.

Put differently, "the undisputed facts, considered under the standards required by [Rule 12(b)(6)], require a holding of ineligibility under the substantive standards of law." *SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). DK therefore respectfully requests dismissal of Counts I-III on these grounds.

## II.    LEGAL STANDARD

Abstract ideas are not patent eligible under Section 101. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Whether a patent claims an abstract idea is determined through a two-step test. *Id.* at 217. Step one considers whether a claim's "character as a whole" is "directed to" an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). For computer-implemented claims, courts consider whether the claim focuses on a "specific asserted improvement in computer capabilities" or, instead, "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016). And if the court determines a claim is directed

to an abstract idea, in step two it must consider whether the claim contains an "inventive concept" sufficient to ensure that it amounts to significantly more than the abstract idea. *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). Generic computer implementation of an abstract idea with off-the-shelf software is not an inventive concept. *Alice*, 573 U.S. at 222-27.

## III. IG'S CLAIMS ARE INVALID AS PATENT-INELIGIBLE UNDER SECTION 101

The claims of the Asserted Patents all exhibit the same "well-settled indicators of abstractness" enumerated in *Beteiro*. 104 F.4th at 1355. They (1) broadly recite generic steps of a kind the Federal Circuit has frequently held are abstract; (2) are drafted using result-focused functional language with no specificity about how the purported invention achieves those results or improves existing technology; (3) are similar to other ineligible claims; and (4) are analogous to longstanding "real-world" activities. *Id.* at 1355-57.

In this regard, the Asserted Patents all relate to processes for "enabl[ing]"/"authoriz[ing]" mobile wager-based gaming based on certain generic "determining" steps, such as "determining that the smart phone is not running an unapproved process" ('382 Patent, Claim 1), "determin[ing] whether the mobile device is within or without a geographical area" ('302 Patent, Claim 1), and "determin[ing] whether the GPS data is not determinable" ('404 Patent, Claim 1). Each such "determining" step is recited as "a result, *not* a means to achieve it. So up front it's abstract." *Bot M8 LLC v. Sony Corp. of Am.*, 465 F. Supp. 3d 1013, 1021 (N.D. Cal. 2020).[3]

In addition, each of the Asserted Patents[4] includes "a guide to interpreting the present application" that explains how "[t]he term 'determining' … is used in an *extremely broad* sense" and "encompasses a wide variety of actions," including "calculating, computing, processing, deriving, investigating, looking up (*e.g.*, looking up in a table, a database or another data structure),

---

[3] Emphasis added here and elsewhere unless otherwise noted.
[4] The '382 Patent incorporates the disclosure of the '302 Patent by reference. '382 Patent, 1:8-26.

ascertaining and the like." '302 Patent, 3:6-7, 5:13-25; '404 Patent, 70:62-63, 71:33-44. The interpretive guide also states that "a computer *need not* necessarily perform the determining." '302 Patent, 5:35-36; '404 Patent, 71:52-54. And as to the "enabl[ing]"/"authoriz[ing]" steps that depend upon the results of those "determining" steps, the Asserted Patents state they may be "performed by *any entity* desired (*e.g.*, a customer, a program, an agent of a gaming operator, a kiosk)." The Asserted Patents therefore explicitly admit that *all* the claimed steps cover virtually *any* way of achieving the claimed results, including with the human mind. These steps therefore fall squarely within the abstract-idea category. *See Elec. Power Grp.*, 830 F.3d at 1354 ("[A]nalyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category.").

To the extent the claimed processes *are* performed by a computer, the Asserted Patents further confirm that these processes may be implemented by "*general purpose* computers" using well-known, commercially available technology—*e.g.*, "an Android wrapper application," "an Apple application," "GPS," "triangulation," and "so on." '302 Patent, 8:21-25, 39:26-36; '404 Patent, 12:23-27, 73:21-25. In fact, the Asserted Patents are ambivalent as to what technology is used, explaining that these examples are "non-limiting" and that the claimed processes could be performed with "*any* desired programs and/or *no programs at all*." '302 Patent, 39:28-31; '404 Patent, 24:66-25:2. And they do so without also explaining *how* a single one of those endless possibilities might work to achieve the claimed results. Claiming everything and nothing is certainly abstract.

Moreover, the vast majority of the claimed processes encompass using information already found on the claimed device. And "gathering information already found on the user's device, analyzing that information, and reporting the results … do[es] not qualify as an improvement in

4

computer capabilities." *GeoComply Sols. Inc. v. Xpoint Servs. LLC*, No. 22-1273-WCB, 2023 WL 1927393, at *1, *11 (D. Del. Feb. 10, 2023), *aff'd*, No. 2023-1578, 2024 WL 4717268 (Fed. Cir. Nov. 8, 2024).  That is because obtaining and analyzing information are conventional computer functions and abstract concepts, not improvements.  *Elec. Power Grp.*, 830 F.3d at 1354.

The claims also fail step one of the eligibility inquiry because they merely claim a "combination of [] abstract-idea processes."  *Elec. Power Grp.*, 830 F.3d at 1354.  The combination of generic "determining" and "enabl[ing]"/"authoriz[ing]" steps also does not save the claims at step two of the inquiry because "a claimed invention's *use* of the ineligible concept to which it is directed cannot supply the inventive concept[.]"  *BSG Tech*, 899 F.3d at 1290.  And merely "describing the functions of the abstract idea itself, without particularity" is "not enough under step two."  *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1382 (Fed. Cir. 2022).

It follows that similar claims directed to similar subject matter—*e.g.*, "authorizing access to an online wagering service based on the location of a mobile device," "allowing or disallowing the bet based on where the user is located," and "authoriz[ing] game play based at least in part on an age of a player"—have been found patent-ineligible under Section 101.  *See, e.g.*, *Micro-Gaming Ventures, LLC v. DraftKings, Inc.*, No. 3:25-4102 (ZNQ) (JTQ), 2026 WL 867761, at *8 (D.N.J. Mar. 30, 2026); *Beteiro*, 104 F.4th at 1355; *IG (I)*, 2016 WL 7190547, at *5 (D. Nev. Dec. 12, 2016).  The claims here are most similar to those in *Beteiro* and *GeoComply* in this regard, and they should be invalidated for the same reasons.

### A. Claims 1-30[5] of the '382 Patent Claim Ineligible Subject Matter

In *Beteiro*, the Federal Circuit considered claims related to remote gaming that involved a computer authorizing a bet and held that the claims were directed to the abstract idea of

---

[5] IG alleges infringement of "*at least* claims 1-26 and 29[.]" Dkt. 1, ¶ 144.

"exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located."  104 F.4th at 1353-57.  The '382 Patent claims are analogously directed to the abstract idea of authorizing the use of a "gambling application" on a smart phone based on the phone's running processes, installed applications, and operating system.

Claim 1 is representative in this regard, reciting a series of "determin[ing]" steps performed by a "wrapper application" that "enable[s]" use of a "gambling application" based on the results:

> 1. A smart phone, comprising:
> a memory having instructions stored thereon that, when executed by at least one processor, cause the at least one processor to execute a wrapper application and a gambling application associated with the wrapper application, wherein the gambling application is configured to perform wagering actions in connection with a gambling service; and
> wherein the wrapper application is configured to:
> > *determine* that the smart phone is authorized to use the gambling service by:
> > > *determining* that the smart phone is not running an unapproved process;
> > > *determining* that the smart phone does not have an unapproved application installed; and
> > > *determining* that an operating system running on the smart phone is approved for use with the gambling service; and
> > in response to determining that the smart phone is authorized to use the gambling service, *enable* a user of the smart phone to gamble using the gambling application.

This claim exhibits all of the same "well-settled indicators of abstractness" as those invalidated in *Beteiro*.  104 F.4th at 1355-57.  And the "determin[ing]" and "enabl[ing]" elements do nothing to save the claim at step two because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]"  *BSG Tech*, 899 F.3d at 1290.

### 1.  *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea

Claim 1 uses "result-focused functional language, containing no specificity about how" the wrapper application determines that a phone has no unapproved processes, does not have an unapproved application installed, or is running an approved operating system.  *Beteiro*, 104 F.4th at 1356.  At this level of generality, the claim merely "describe[s] a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified

6

problem." *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016). "Claims of this nature are almost always found to be ineligible[.]" *Beteiro*, 104 F.4th at 1356.

That claim 1 authorizes gambling based on multiple determinations related to the device, and not location, is immaterial. In *Universal Secure Registry LLC v. Apple Inc.*, the Federal Circuit explained that in cases involving analogous authentication technology, "eligibility often turns on whether the claims provide sufficient specificity to constitute an improvement to computer functionality itself." 10 F.4th 1342, 1346 (Fed. Cir. 2021). In that case, the court found ineligible claims related to multi-factor authentication. The claims of one patent were directed to "multi-factor authentication of a user's identity using two devices to enable a transaction." *Id.*, 1356. The court found those claims "not sufficiently specific" to be an improvement and held that, without "some unexpected result or improvement, the claimed idea of using three or more conventional authentication techniques to achieve a higher degree of security is abstract." *Id.*, 1357.

For the same reasons, the idea of using multi-factor device authorization to enable gambling in claim 1 is abstract. The smart phone, memory, processor, wrapper application, and gambling application are generically claimed, and nothing in the '382 Patent indicates their underlying functionality is improved. The "determining" steps lack sufficient specificity to constitute an improvement, and dependent claims confirm these steps merely encompass the conventional activities of obtaining information (*e.g.*, "a list of applications installed") and comparing it to other information (*e.g.*, "a list of unapproved applications"). '382 Patent, cls. 2, 4, 6. But comparing information (*e.g.*, a name) to a list (*e.g.*, a guest list) before authorizing access is a longstanding activity—an abstract idea. *Beteiro*, 104 F.4th at 1356-57. And as it was in *Universal*, using "three or more conventional" authorization techniques to enable gambling is abstract. 10 F.4th at 1356-57. The Court should proceed to *Alice* step two.

### 2.  *Alice* Step 2: Claim 1 lacks an inventive concept

The "determining" and "enabling" steps do not save claim 1 at step two because "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]" *BSG Tech*, 899 F.3d at 1290.  Moreover, requiring that criteria be met before allowing gambling is routine industry activity.  The '382 Patent admits that its "authentication protocol" is meant to facilitate compliance with "regulatory requirements," demonstrating that such requirements were well known.  '382 Patent, 25:4-7.  And the various "determining" steps encompass obtaining and comparing information (*e.g.*, lists).  *Id.*, cls. 2, 4, 6.  This type of analysis is a routine computer function, and using a list to authorize access is conventional activity.

The smart phone, memory, processor, wrapper application, and gambling application are generically claimed, conventional elements that do not supply an inventive concept.  *See Alice*, 573 U.S. at 221-27.  The patent admits that the various processes may be implemented by "general purpose computers" using commercially available software applications (*e.g.*, "an Android wrapper application," "an Apple application …, and so on.").  '382 Patent, 2:1-11, 2:58-67, 2:33-57, 3:49-53, 24:11-21.  Nothing in the patent, let alone the claims, indicates the applications are "associated" in an inventive way.  Because "the specification 'describes the components and features listed in the claims generically,' it 'supports the conclusion that these components and features are conventional.'" *Beteiro*, 104 F.4th at 1358 (quoting *Weisner*, 51 F.4th at 1083-84).

The "ordered combination" is similarly not inventive.  Claim 1 reflects a conventional ordering of steps—enabling an action after determining that the action is authorized—that one would expect to see, if not be legally required to follow, when implementing the abstract idea.  Nothing suggests "that the claimed combination of these conventional" authorization techniques "achieves more than the expected sum of the security provided by each technique." *Universal*, 10 F.4th at 1353.  Accordingly, claim 1 is directed to ineligible subject matter.

### 3. Claim 1 is representative of all the '382 Patent claims

Claim 1 is representative of independent claims 14, 26, and 27 (Appendix A at 1, 5, 6) because each is "substantially similar and linked to the" same abstract idea. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Claim 14 recites the subject matter of claim 1 as a method. Claim 27's server determines the phone is authorized, instead of the wrapper, but "merely requiring generic computer implementation fails to transform that abstract idea into a patent-eligible invention." *Alice*, 573 U.S. at 212. Claim 27 further recites that "a determination" is transmitted to the phone, but a computer receiving and sending information, without more, "is not even arguably inventive." *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014); *see also Beteiro*, 104 F.4th at 1355 ("transmitting a notification" is a "generic step"). Claim 26 recites "means for" performing the results in claim 1 and adds "means for determining" a communication interface is disabled or inactive. The means-plus-function limitations do not make claim 26 eligible because the patent "describes generic, well-known computer hardware and software" and the claimed functionality is abstract. *Hyper Search, LLC v. Facebook, Inc.*, No. 1:17-cv-1387-CFC-SRF, 2018 WL 6617143, at *9 (D. Del. Dec. 17, 2018). The additional "determining" step merely adds another result related to the abstract idea without specifying *how* to achieve it in a concrete way. *Beteiro*, 104 F.4th at 1355-56.

The dependent claims relate to "determining" whether a phone meets requirements for gambling and do not make the claims less abstract or add an inventive concept. Claims 2-3, 15-16, and 28-29 add obtaining a list of processes running on the phone and comparing it to a list of unapproved processes to identify whether one is unapproved. Other claims apply that technique to applications (claims 4, 17, 30) or the operating system (claims 6-8, 19-21). Claims 5 and 18 add determining a signature and a time stamp, comparing the signature to an approved one, and determining that the time stamp is within a threshold. Claims 2-8, 15-21, and 28-30 are thus

abstract because they claim results and amount to "collecting and analyzing information[.]" *Elec. Power Grp.*, 830 F.3d at 1353-54. Combining multiple abstract ideas in this way "does not render the claim[s] non-abstract" and there is nothing inventive about a computer comparing information. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Claims 9-12 and 22-25 add "determining" that a communication interface is disabled (claims 9-10, 22-23) or inactive (claims 11-12, 24-25), and claim 13 recites that the wrapper application is "configured to execute, at least in part, the gambling application." These claims lack specificity regarding *how* the wrapper determines an interface is disabled or inactive, or executes the gambling application, and thus exhibit the same "well-settled indicators of abstractness" as the independent claims. *Beteiro*, 104 F.4th at 1355. Accordingly, the '382 Patent claims are ineligible.

### 4. The allegations in IG's complaint fail to show eligibility or preclude dismissal

IG's allegation that the '382 Patent solved "technological problems" neither establishes eligibility nor precludes dismissal. Dkt. 1, ¶ 26. The Court is "not required" to accept IG's "legal conclusions as true, even if couched as factual allegations." *Bridge & Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 894 (Fed. Cir. 2019) ("That includes [plaintiff's] repeated characterization of its inventions as 'technical innovations.'"). While IG alleges that "users may be able to trick mobile applications into violating state-specific regulations" by modifying their phone "in a manner that spoofs or fakes" a location (Dkt. 1, ¶ 28) and that "the inventors devised a system that confirms the device has not been modified" by "looking for unapproved processes, applications, or operating systems," (*Id.*, ¶ 31) IG has not actually claimed "any specific implementation of a technique for eliminating geolocation spoofing or evasion; it has claimed merely the idea of using the existence of certain programs on a user's device in determining" whether the device is authorized, regardless of how it is implemented. *GeoComply*, 2023 WL 1927393, at *15. And *Beteiro* confirms that complying with regulations is a legal problem, not a

10

technical one, and is "rooted in the abstract[.]"  104 F.4th at 1357.

IG's allegations regarding the wrapper application fail to plausibly allege eligibility because "only features that are claimed … can supply something beyond ineligible matter[.]" *GoTV Streaming, LLC v. Netflix, Inc.*, 166 F.4th 1053, 1061 (Fed. Cir. 2026).  IG's claim that the inventors "developed a novel 'wrapper' that allowed common software to run on different devices" (Dkt. 1, ¶ 32) is belied by the specification's explicit statement that the wrapper's functions could be performed by "*any* desired programs and/or *no programs at all*."  '382 Patent, 24:11-21, 26:19-21.  This is the *opposite* of novel.  And neither the specification nor the claims provide any insight whatsoever into how the wrapper purportedly "enables a unified programming language across a range of devices regardless of their specific requirements."  *Id.*, ¶ 53.  The '382 Patent therefore fails to disclose either an improvement to the underlying technology or an inventive concept.

## B.  Claims 1-40[6] of the '302 Patent Claim Ineligible Subject Matter

The '302 Patent claims are directed to the abstract idea of repeatedly authorizing gaming based on a determination that a mobile device and its user are "authorized" and repeated location determinations based on the device's distance from a boundary.  They are similar to the '382 Patent claims and differ primarily in their addition of the concept of repetition in "determin[ing]" and "allow[ing] and disallow[ing]."  Claim 1 is representative in this regard:

1. An apparatus comprising:
a machine readable medium having stored thereon a set of instructions that are configured to cause a processor to:
*determine* whether a mobile device is authorized to use a gaming service;
*determine* whether a user of the mobile device is authorized to use the gaming service;
to *repeatedly*:
*determine* whether the mobile device is within or without a geographical area in which the user is allowed to engage in gaming activity on the mobile device;
*allow or disallow* the user's gaming activity based at least in part on the determination that the mobile device is authorized, the determination that the user is authorized, and the determination that the mobile device is located within or without

---

[6] IG alleges infringement of "*at least* claims 1-17, 19-24, 26, and 28-40[.]"  Dkt. 1, ¶ 154.

> (respectively) the gaming-allowed geographical area; and
>
> *determine* a period of time to elapse until the next repetition of determination whether the mobile device is within or without the gaming-allowed geographical area, the period of time to be based at least in part on a distance of the mobile device from a boundary of the gaming-allowed geographical area.

Like IG's other claims, claim 1 exhibits *Beteiro's* "indicators of abstractness." 104 F.4th at 1355. Specifically, combining "allow[ing] and disallow[ing]" steps with generic authorizations and location-determinations does not make the claim patent eligible. *RecogniCorp*, 855 F.3d at 1327.

### 1. *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea

All but one limitation of claim 1 is a generic "determine" element—a term the '302 Patent uses "in an extremely broad sense" that encompasses virtually *any* way of achieving the claimed results (*e.g.*, mental processes). *Elec. Power Grp.*, 830 F.3d at 1353-54. The claim requires the functional results of "determine" and "allow or disallow," but does not describe *how* to achieve them in a non-abstract way. *Beteiro*, 104 F.4th at 1356. And it lacks any meaningful limitations that improve a computer as a tool. Thus, the authorization aspects of claim 1 do not pass muster under *Universal* for similar reasons to the '382 Patent claims. 10 F.4th at 1346; *see supra*, § III.A.

Closely analogous claims directed to restricting wager-based gaming based on location were found abstract in *Beteiro*. There, the claims were directed to the abstract idea of "exchanging information concerning a bet and *allowing or disallowing* the bet based on where the user is located." *Beteiro*, 104 F.4th at 1355-57. They recited a device comprising "a global positioning device" that "determines a position or location[.]" *Id.*, 1353-54.[7] Claim 1 of the '302 Patent is even more abstract because it lacks any details regarding *how* to determine the location (*e.g.*, "a

---

[7] The Federal Circuit has also summarily affirmed decisions finding claims involving location-based determinations abstract. *See, e.g.*, *GeoComply*, 2023 WL 1927393, at *6; *CG Tech. Dev., LLC v. FanDuel, Inc.*, 442 F. Supp. 3d 840, 843-44, 846-48 (D. Del. 2020), *aff'd*, 858 F. App'x 363 (Fed. Cir. 2021); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 204 F. Supp. 3d 1190, 1269 (D.N.M. 2016), *aff'd sub nom.*, *Front Row Techs. LLC v. MLB Advanced Media, L.P.*, 697 F. App'x 701 (Fed. Cir. 2017).

global positioning device"), much less how to make location determinations based on a device's distance from a boundary. That these steps are performed "repeatedly" does not make them any less abstract because the "performance of repetitive calculations" is a "basic function" of a computer and "does not impose meaningful limits on the scope of [the] claims." *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012).

Furthermore, "waiting until a particular point in time" to do something—here, determining a location—"is an old concept, used for decades" and an abstract idea. *Fitbit Inc. v. AliphCom*, No. 16-cv-00118-BLF, 2017 WL 819235, at *15 (N.D. Cal. Mar. 2, 2017). In *Enovsys LLC v. Uber Technologies, Inc.*, for example, the court considered claims involving "location information provided at intervals" and found them abstract. No. 23-cv-04549, 2024 WL 3033995, at *1-*2, *9-*10 (N.D. Cal. June 17, 2024). The court in *PerDiemCo LLC v. NexTraq LLC* similarly found claims related to analyzing "geo-tracking information in real time to determine when location events occur" abstract and ineligible. 720 F. Supp. 3d 1365, 1378-81 (N.D. Ga. 2024), *aff'd* No. 2024-1621, 2026 WL 1379782 (Fed. Cir. May 15, 2026). The same reasoning applies to claim 1.

Indeed, allowing or disallowing gaming based on information, including location, is a "longstanding 'real-world'" activity. *Beteiro*, 104 F.4th at 1356 ("Those accepting bets have *always* had to confirm that the bettor … was located in a place where gambling was allowed[.]") (citation omitted; emphasis in original); *see also* Dkt. 1, ¶ 19; '302 Patent, 68:46-69:59. The elements of claim 1 are analogous to steps a casino operator would ordinarily take: checking an individual's ID to ensure they are old enough; verifying that equipment used in gaming (*e.g.*, dice or cards) is not compromised; and periodically ensuring that gaming occurs only in approved areas (*e.g.*, in "a casino that straddled state lines," ensuring that patrons were on the Nevada side before accepting a bet). *Beteiro*, 104 F.4th at 1356-57. Claim 1 simply recites performing this "abstract

13

idea on a generic computer" in the context of mobile gaming. *BSG Tech*, 899 F.3d at 1285.

### 2. *Alice* Step 2: Claim 1 lacks an inventive concept

Repeatedly determining a period of time before the next location check based on a distance from a boundary—the primary difference between these claims and the '382 Patent claims—is not an inventive concept because "[p]eriodically updating data is a routine and conventional computer function." *See Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031, 1057 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018). And such a result-focused element "has no transformative effect" on claim 1. *Fitbit*, 2017 WL 819235, at *17.

Likewise, the machine-readable medium and processor recited in claim 1 merely "spell out" what it means to apply the abstract idea on a computer and "cannot confer" eligibility. *Intell. Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015). The specification confirms that the processes it describes may be implemented by "general purpose computers" using "*any* desired programs and/or *no programs at all*." '302 Patent, 8:21-25, 39:28-31. Considered as an ordered combination, claim 1 does not recite an inventive arrangement of components or order of steps. *See id.*, 45:32-34. As discussed, allowing gaming if certain requirements are met and disallowing it if a requirement is no longer met is conventional.

### 3. Claim 1 is representative of all the '302 Patent claims

Claim 1 is representative of independent claim 22 (Appendix B at 1). Claim 22 recites a "mobile device" "configured to" perform conventional functions: transmit requests, communicate, and provide a user interface. That a "gaming service" performs the elements of claim 1 and the service "includes one or more servers" ('302 Patent, 2:43-44) is immaterial because such "generic computer implementation" does not make a claim eligible. *Alice*, 573 U.S. at 221.

The dependent claims are related to the abstract concept of claim 1 and do not transform the claims into something non-abstract or add an inventive concept. Claims 2 and 3 continue to

14

allow or prevent gaming based on location, which merely restates part of the abstract idea of claim 1. Claim 24 adds a "cellular telephone" and "cellular phone service," which limit the abstract idea to a particular technological environment but do not render the claim eligible. *Id.*, 223.

Claims 4-7, 18-20, 23, 25, 30-31, 34-38, and 40 recite results related to device or user authorization that involve "determin[ing]" or other generic steps analogous to those the Federal Circuit has held are abstract. *Beteiro*, 104 F.4th at 1355. These claims determine whether: a telephone number is signed up (claims 4 and 20); a user is authorized based on a login and password (claims 5, 30-31, 40); the device is in the allowed area by querying a geofencing service (claim 6); an operating system is authorized (claims 7 and 23); an identity of the device is authorized (claim 19); an installed application (claims 34-36) or a running process (claims 37-38) is disallowed; and an account includes a threshold amount or the user is old enough to wager (claim 40). Claims 18 and 25 recite generating a hash from a portion of an approved operating system and other information, receiving an indication of a second hash generated by the device, and comparing them: all abstract results reflecting routine computer functions (*e.g.*, analyzing information), not inventive concepts. *Beteiro*, 104 F.4th at 1355-56.

For example, the '302 Patent does not purport to have invented a new hashing technique. It describes known methods and refers readers to *Wikipedia* for information. '302 Patent, 39:40-42, 68:11-20. The patent also admits that geofencing services were commercially available from Sprint and other providers. *Id.*, 36:24-35, 53:33-41. Thus, reciting "a boundary of a geofence" (claim 17) or that the boundary is established "by factors other than a transmission boundary of a transmission base station" (claim 21) adds well-known features, not inventive concepts.

Claims 8-16 add "determine" limitations related to "the inter-repetition period of time" based on the distance from the boundary. These claims are drafted using functional language, lack

15

specificity regarding *how* the results are achieved, and amount to analysis of information and mathematical algorithms. Such features do not make claims eligible. *Elec. Power Grp.*, 830 F.3d at 1354 ("gathering and analyzing information of a specified content" is abstract); *Parker v. Flook*, 437 U.S. 584, 594-95 (1978) (finding claim for computing "alarm limits" abstract). Adding one abstract idea to another "does not render the claim non-abstract." *RecogniCorp*, 855 F.3d at 1327.

Claims 26-29, 32-33, and 39 relate to a unique session identifier and do not add anything inventive or non-abstract. *See Chewy, Inc. v. Int'l Bus. Machs. Corp.*, 94 F.4th 1354, 1368 (Fed. Cir. 2024) (finding claim that "recites using a user session identifier to implement the abstract idea" not an inventive concept). Claim 26 recites "receive a unique session identifier" with no specificity about the identifier or from where it is received. Claims 27 and 32 merely add that the identifier is received "in response to" the device being in the allowed area or a determination that a username and password are valid. A computer receiving information is not inventive and taking some action in response to analyzing information is still abstract. *See buySAFE*, 765 F.3d at 1355; *FairWarning IP LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016). Claims 28 and 29 fail to specify how to determine whether the identifier is valid and, with respect to claim 39, *Beteiro* confirms that receiving a wager request does not make a claim eligible. *Beteiro*, 104 F.4th at 1355-56. Claim 39 also lacks specificity regarding determining the identifier is valid or disallowing wagering, and thus is not eligible. *Id.*

### 4.  The allegations in IG's Complaint fail to show eligibility or preclude dismissal

IG alleges that "the inventors needed to tackle the prospect of a user traveling in a vehicle, and potentially heading out of state, or being near a border" in the context of remote gaming. Dkt. 1, ¶ 34. The Federal Circuit, however, has recognized "a critical difference between patenting a particular concrete solution to a problem and attempting to patent the abstract idea of a solution to the problem in general." *Elec. Power Grp.*, 830 F.3d at 1356. IG's claims fall in the latter category

16

of ineligible claims.  IG alleges that the "claimed techniques are unconventional[.]"  Dkt. 1, ¶ 69.

But the "relevant inquiry" is not whether the claim "as a whole is unconventional or non-routine."

*BSG Tech*, 899 F.3d at 1290.  Rather, step two considers "[w]hat else is there in the claims" beyond

the abstract concept.  *Id.*  Even accepting IG's allegation, there is nothing in the '302 Patent claims

beyond abstract ideas and generic computer elements, and "a claim for a new abstract idea is still

an abstract idea."  *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016).

## C.  Claims 1-30[8] of the '404 Patent Claim Ineligible Subject Matter

The '404 Patent claims are directed to the abstract idea of authorizing gambling based on

the determination of a smartphone's location using multiple techniques and exchanging

information with a server to confirm the location and enable gambling.  Like the '302 Patent, the

'404 Patent claims recite multiple location-"determin[ing]" steps and an "enabl[ing]" step:

> 1. A system, comprising:
> one or more server computers associated with a gambling service, each of the one or more server computers including at least one processor; and
> an application executable on a smartphone, the application configured to:
> when the application is attempting to access at least one gambling activity of the gambling service:
> attempt to *determine* a location of the smartphone based on GPS data of the smartphone;
> *determine* whether the GPS data is not determinable;
> attempt to determine the location of the smartphone based on triangulation;
> *determine* the location of the smartphone based on the triangulation;
> provide information indicative of the determined location to the one or more server computers;
> receive, from the one or more server computers, an indication that the smartphone is in a U.S. state where gambling is allowed based on the information indicative of the location; and
> *enable* the application to access the gambling service to engage in the at least one gambling activity based on the indication.

IG did not invent or improve upon any of these techniques.  The '404 Patent claims are therefore

---

[8] IG alleges infringement of "*at least* claims 2, 3, 5-9, 11, 12, 14-18, 20, 21, and 23-27[.]"  Dkt. 1, ¶ 165.

abstract for similar reasons as the '302 Patent claims, and the analysis above applies here, particularly as it relates to the "extremely broad" "determin[ing]" limitations.  *See supra*, § III.B.

### 1.  *Alice* Step 1: Claim 1 is directed to a patent-ineligible abstract idea

Both *Beteiro* and *GeoComply* are instructive as to claim 1.  *Beteiro* addressed claims directed to "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located" (104 F.4th at 1355), and *GeoComply* addressed claims directed to "ascertaining the location of a person by using multiple sources of information" (2023 WL 1927393, at *11).  This is, at most, what happens in claim 1.  And just as the "global positioning device" in *Beteiro* and the "multiple sources of information" in *GeoComply* did not save the claims in those cases from abstraction, they also do not save claim 1 here.  The same is true of applying the abstract idea to a particular field of information (geolocation information and programs) in *GeoComply*.  2023 WL 1927393, at *11.  In other words, applying the abstract idea to location information based on GPS data and triangulation does not make claim 1 eligible either.

### 2.  *Alice* Step 2: Claim 1 lacks an inventive concept

Each step performed by the application in claim 1 is individually abstract and, considered together, amount to no more than a claim to the abstract idea itself, which cannot supply an inventive concept.  *BSG Tech*, 899 F.3d at 1290.  The additional elements—server computer, processor, smartphone, application—are conventional.  This "generic implementation of an abstract idea" fails to provide an inventive concept.  *GeoComply*, 2023 WL 1927393, at *12.

Using GPS and triangulation in combination also is not an inventive concept.  *See id.* at *12-*18; *Beteiro*, 104 F.4th at 1357-59 (finding "GPS on a mobile phone" conventional "even as of 2002").  The patent contemplates using "any methodologies in any combination for determining locations[.]"  '404 Patent, 7:38-43, 15:9-13.  Moreover, IG did not invent or improve upon GPS or triangulation.  The specification does not describe *how* to create an application capable of

determining a phone's location based on GPS data or triangulation; it simply presumes such functionality exists. For example, the patent mentions triangulation three times outside the claims, never once explaining how to accomplish it. *Id.*, Abstract, 12:23-27, 48:37-41. The specification's generic description "'support[s] the conclusion that these components and features are conventional.'" *Beteiro*, 104 F.4th at 1358 (quoting *Weisner*, 51 F.4th at 1083-84). The ordered combination reflects the well-known regulatory framework that has guided legal gambling since its inception, and using more than one source to confirm information is a fundamental practice, not an inventive concept. *Beteiro*, 104 F.4th at 1356-57. Claim 1 is therefore ineligible.

### 3.   Claim 1 is representative of all the '404 Patent claims

Claim 1 is representative of independent claims 10 and 19 (Appendix C at 1, 5). Claim 10 recites the functionality of claim 1 as a method. Claim 19 recites a "system" that includes a single "means for" performing the same. The means-plus-function limitations do not render claim 19 eligible because "the specification describes generic, well-known computer hardware and software components" and the claimed functionality is abstract. *Hyper Search*, 2018 WL 6617143, at *9.

The dependent claims "add nothing of consequence" and "do not overcome the infirmities" of claim 1. *GeoComply*, 2023 WL 1927393, at *17. Based on the limited description in the patent, the only plausible conclusion is that the "applicant drafted the specification understanding that a person of ordinary skill" knew what cell phone triangulation (claims 29 and 30) was, "how to include it on a mobile device, and that using it for the purposes disclosed in the patent was routine[.]" *Beteiro*, 104 F.4th at 1358. Many dependent claims recite "determine" or "attempt to determine" steps having "extremely broad" scope (claims 2-5, 8-9, 11-14, 17-18, 20-23, 26-27). '404 Patent, 71:33-54. Others recite equally generic steps such as "receive" and "attempt to map" (claims 6-7, 15-16, 24-25) or "determine," "compare," and "prevent" (claim 28). *Beteiro*, 104 F.4th at 1355. Each lacks specificity regarding *how* to achieve the claimed results. *Id.* at 1356.

19

No details are claimed about how to determine a confidence level of a GPS determination (claims 2, 11, 20) or that an error occurred in attempting to use GPS (claims 3, 12, 21). The claims do not recite a particular technique to determine location based on wifi data (claims 4, 13, 22) or that the phone is connected to a trusted network (claims 5, 14, 23). Claims 6, 15, and 24 confirm that determining location based on wifi data encompasses receiving a list of networks and "attempting to map" the list to a location (*i.e.*, analyzing information) without specifying any details about how to perform the mapping. Similarly, claims 7, 16, and 25 recite no details regarding how to map a list of networks and respective signal strengths to the location. Claims 8-9, 17-18, and 26-27 enable access to the gambling service "based on a determination" that the phone has not been rooted or no invalid interfaces are enabled without specifying how those determinations are made. Claim 28 involves analyzing information and acting upon that analysis in a generic way, with no details about how to obtain a wireless access point-based location, determine mismatch, or prevent access. Ultimately, the dependent claims suffer the same deficiencies as the independents.

### 4. The allegations in IG's Complaint fail to show eligibility or preclude dismissal

IG's allegations that the claims address the challenge of "[a]chieving the location precision required to ensure" a user is located where gambling is legal and that the claimed approach allows for "unprecedented precision" (Dkt. 1, ¶¶ 74-75) are not plausible in view of the claims and the specification. *See GeoComply*, 2023 WL 1927393, at *13-*14. The claims merely employ known techniques. Neither the claims nor the specification describes a specific technique for enabling more precise location determinations using GPS or triangulation.

## IV.    REQUEST FOR ORAL ARGUMENT

The Court should grant DK's motion and dismiss Counts I-III with prejudice without leave to amend. *See Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023) ("No amendment … can alter what a patent" states.). DK respectfully requests oral argument.

20

Dated: June 23, 2026

Respectfully submitted,

/s/ *Brian M. Seeve*
Brian M. Seeve (BBO No. 670455)
Prince Lobel Tye LLP
One International Place, Suite 3700
Boston, MA 02110
Tel: (617) 456-8000
bseeve@princelobel.com

Kurt M. Pankratz (*pro hac vice*)
Clarke W. Stavinoha *(pro hac vice)*
BAKER BOTTS L.L.P.
2001 Ross Ave
Suite 900
Dallas, TX 75201
(214) 953-6500

Jamie R. Lynn
Thomas C. Martin *(pro hac vice)*
Michael Kachmarik *(pro hac vice)*
Andrew Wilson (*pro hac vice*)
Erica Rose (*pro hac vice*)
BAKER BOTTS L.L.P.
700 K St. N.W.
Washington, D.C. 20001
(202) 639-7786

*Attorneys for Defendant DraftKings Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2026, I electronically filed the above document with the U.S. District Court for the District of Massachusetts by using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

/s/ *Brian M. Seeve*
Brian M. Seeve

21